# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNTIED STATES OF AMERICA *ex rel.* § | | |
| DAVID MAGEE § | | PLAINTIFFS |
| § | | |
| v. § | | Civil No. 1:09CV324-HSO-JMR |
| § | | |
| LOCKHEED MARTIN § | | |
| CORPORATION, *et al.* § | | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER DENYING WITHOUT PREJUDICE DEFENDANTS ROBERT KNESEL AND STEPHEN ADAMEC'S MOTION TO STAY CIVIL PROCEEDINGS OR ALTERNATIVELY THEIR DEPOSITIONS AND OTHER DISCOVERY PENDING RESOLUTION OF CRIMINAL INVESTIGATION

BEFORE THE COURT is the Motion [221] to Stay Civil Proceedings or Alternatively the Depositions and Other Discovery Pending Resolution of Criminal Investigation, filed by Defendants Robert Knesel ["Knesel"] and Stephen Adamec ["Adamec"] [collectively, "Movants"] on June 4, 2010. Movants filed a supporting Memorandum [222]. Defendant Science Applications International Corporation ["SAIC"] has partially joined [226], [227] in this Motion, only insofar as it seeks a stay of the Movants' depositions and other discovery directed to them pertaining to Paragraphs 6 and/or 63-68 of the Government's First Amended Complaint. The Government [234], [235], and Relator David Magee [237], have filed Responses in opposition to the Motion, and Movants a Rebuttal [240]. After consideration of the parties' submissions, the record, and the relevant legal authorities, and for the reasons discussed below, the Court finds that the Motion [221] to Stay should be denied without prejudice.

I. BACKGROUND

Movants seek to stay this case in its entirety, or alternatively, to stay their depositions originally scheduled for July 1 and 15, 2010, and now scheduled for August 10 and the week of August 16, 2010, as well as other discovery directed to them. *See* Mem. Br. in Supp. of Mot., at pp. 1-2; Rebuttal, at p. 4. They aver that they are "potential targets" of a criminal investigation underway in the Southern District of California surrounding the conduct which is the subject of the allegations contained in Paragraphs 64-68 of the Government's First Amended Complaint. *See id.* at p. 1. Movants assert that:

> [t]o subject [them] to any discovery on those issues, including their depositions, will force [them] to make the impossible choice of defending themselves in the present civil action or maintaining their silence as to matters at issue in the criminal proceeding.

Mot., at p. 2.

In support of their claim that they are potential targets of a criminal investigation, Movants submit the Affidavit of Michael Attanasio ["Attanasio"], who represents multiple employees of co-Defendant SAIC, at least some of whom received grand jury subpoenas and subsequently testified under oath before a grand jury sitting in the Southern District of California. *See* Aff. of Michael Attanasio, at pp. 1-2, attached as Ex. "B" to Mot. Attanasio relates that,

> [f]rom [his] conversations with the Assistant United States Attorney supervising the investigation, [he] understand[s] that one of the subject matters being investigated by the United States Attorney's Office concerns the same topics alleged in paragraphs 64 and 66-68 of the Amended Complaint in this matter.

*Id.* at p. 1.

> The relevant Paragraphs of the First Amended Complaint read as follows:
>
> 6.   In October 2006, in response to the government's investigation of the NCCIPS tainted bid solicitation, AES, as the agent of SAIC, Adamec, and Knesel, attempted to hide the evidence of their conspiracy to bias the bid solicitation process, by destroying the hard drive and all back ups of Adamec's computer and by destroying all hard copies of documents related to NCCIPS in Adamec's office.
>
> * * *
>
> 64.   In October 2006, in response to the government's investigation of the tainted bid solicitation, Adamec, Knesel, SAIC, and AES conspired to destroy evidence of Adamec's collusion to bias the NCCIPS solicitation process to favor the SAIC Team.
>
> 65.   During the week of October 30, 2006, Adamec placed all hard copies of all documents relating to NCCIPS that he maintained in his office in burn bags and gave instructions to contracting staff that all such documents were to be destroyed.
>
> 66.   Additionally, during the week of October 30, 2006, Adamec instructed Knesel to have the hard drive and all back up disks to Adamec's computer at NAVO to be destroyed.
>
> 67.   As a result, Knesel instructed an AES employee to destroy Adamec's hard drive and all back up disks to Adamec's NAVO computer.
>
> 68.   The AES employee, acting as an agent of SAIC, used nippers or a hammer to destroy Adamec's hard drive and shredded all the back up disks to Adamec's NAVO computer.

First Am. Compl., ¶¶ 6, 64-68.

The Government responds that a stay is unwarranted, and that Movants' request is, at best, premature since they have not been indicted. *See* Govt.'s Resp., at p. 2. It maintains that Movants have not made a showing sufficient to justify such a stay, and that denial of a stay will not prejudice Movants since they have already given extensive deposition testimony on the subject areas at issue. *See id.* The Government further argues that a stay, whether of the entire case or of the depositions, would prejudice its ability to prosecute this action. *See id.* Relator David

Magee ["Relator"] adds that the Attanasio Affidavit is premised upon inadmissible hearsay, and that additional delays in the case will further degrade relevant facts, increase the unavailability of witnesses, and prejudice the ability of the Government and Relator to prosecute this case. *See* Magee's Resp., at pp. 1-10.

## II. DISCUSSION

A. Applicable Law

"[F]ifth amendment issues frequently arise when parallel criminal, civil or administrative proceedings are pending." *Hoover v. Knight*, 678 F.2d 578, 581 (5th Cir. 1982). The Fifth Circuit has explained that

> [t]here is no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions by different federal agencies against the same defendant involving the same transactions. Parallel civil and criminal proceedings instituted by different federal agencies are not uncommon occurrences because of the overlapping nature of federal civil and penal laws. The simultaneous prosecution of civil and criminal actions is generally unobjectionable because the federal government is entitled to vindicate the different interests promoted by different regulatory provisions even though it attempts to vindicate several interests simultaneously in different forums. The Supreme Court recognized that the federal government may pursue civil and criminal actions either "simultaneously or successively" in 1912 in *Standard Sanitary Manufacturing Co. v. United States*, 226 U.S. 20, 52, . . . and reaffirmed this principle in 1970 in *United States v. Kordel*, 397 U.S. 1, 11 . . . . In both cases, the Supreme Court observed that prompt investigation and enforcement both civilly and criminally were sometimes necessary in order to protect the public interest and that deferring or foregoing either civil or criminal prosecutions could jeopardize that interest. Accordingly, the Supreme Court declined to create a *per se* rule forbidding simultaneous civil and criminal actions to enforce the antitrust and food and drug laws at issue in *Standard Sanitary Manufacturing Co.* and *Kordel*.

*Sec. and Exch. Comm'n v. First Fin. Grp. of Tex., Inc.,* 659 F.2d 660, 666-67 (5th Cir. 1981).

In the foregoing case, the Fifth Circuit declined "to create any *per se* rule forbidding the SEC and Justice Departments from pursuing simultaneous investigations or lawsuits into the same transactions allegedly in violation of federal securities laws." *Id.* at 667. The Court stated that "[i]n 'special circumstances,' however, a district court should stay one of the proceedings pending completion of the other to prevent a party from suffering substantial and irreparable prejudice." *Id.* at 668.

In *Kordel*, the government brought parallel civil and criminal suits against various individual and corporate defendants, alleging violations of the Federal Food, Drug & Cosmetic Act, 21 U.S.C. § 301, *et seq*. *See Kordel*, at 397 U.S. at 2. In discussing parallel civil and criminal proceedings, which were brought by the same agency in that case, the Supreme Court held that, "[i]t would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forego recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." *Id.* at 12.

"The decision whether . . . to stay civil litigation in deference to parallel criminal proceedings is discretionary." *United States v. Simcho*, 326 Fed. App'x 791, 792 (5th Cir. 2009) (*quoting Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004)). "'[T]he granting of a stay of civil proceedings due to pending criminal investigation is an extraordinary remedy, not to be granted lightly.'" *Id.* at 792-93 (*quoting In re Who's Who Worldwide Registry, Inc.*, 197 B.R. 193, 195 (Bankr. E.D.N.Y. 1996)). "In a civil case, there is a strong presumption in

-5-

favor of discovery, and the [movant] must overcome the presumption in its request for a stay." *United States v. Gieger Transfer Serv.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997) (*citing* Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 209 (1990)); *see also Microfinancial, Inc. v. Premier Holidays Intern., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) (noting that "[t]he decision whether or not to stay civil litigation in deference to parallel criminal proceedings is discretionary. . . . A movant must carry a heavy burden to succeed in such an endeavor.") (internal citations omitted). The Fifth Circuit has explained that

> [j]udicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding. In others it may be preferable for the civil suit to proceed–unstayed. In the proper case the trial judge should use his discretion to narrow the range of discovery.

*Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) (internal citation omitted); *see United States ex rel Gonzalez v. Fresenius Med. Care North America*, 571 F. Supp. 2d 758, 762 (W.D. Tex. 2008) (holding, in a *qui tam* case, that where a defendant was the "target" of a criminal investigation, "a mere relationship between civil and criminal proceedings and the prospect that discovery in the civil case could prejudice the criminal proceeding does not necessarily warrant a stay.").

Many district courts have applied the following factors to evaluate whether a stay is warranted: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of

the courts; and (6) the public interest. *See, e.g., Sparkman v. Thompson*, No. 08-01-KKC, 2009 WL 1941907, *2 (E.D. Ky. July 6, 2009); *Lay v. Hixon*, No. 09-0075-WS-M, 2009 WL 1357384, *3 (S.D. Ala. May 12, 2009); *Gonzalez*, 571 F. Supp. 2d at 762 (*quoting SEC v. AmeriFirst Funding, Inc.*, No. 307-CV-1188-D, 2008 WL 866065, at *2 (N.D. Tex. March 17, 2008)); *Eastwood v. United States*, No. 2:06-cv-164, 2008 WL 5412857, *3 (E.D. Tenn. Nov. 14, 2008); *LeBouef v. Global X-Ray*, No. 07-5755, 2008 WL 239752, *1 (E.D. La. Jan. 29, 2008); *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007); *Maloney v. Gordon,* 328 F. Supp. 2d 508, 511 (D. Del. 2004); *In re CFS-Related Secs. Fraud Litig.,* 256 F. Supp. 2d 1227, 1236-37 (N.D. Okla. 2003); *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74 (W.D.N.Y. 2003); *Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526-27 (D.N.J. 1998); *Trs. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.,* 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); *see also Microfinancial, Inc. v. Premier Holidays Intern., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) (applying the following seven factors: (1) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (2) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem; (3) the convenience of both the civil and criminal courts; (4) the interests of third parties; (5) the public interest; (6) good faith of the litigants (or absence of it), and (7) status of the cases); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995) (applying first five factors listed in

*Microfinancial*). Apply the foregoing law and balancing the competing interests in this case, the Court finds that a stay is not warranted at this time.

B.      Balancing the Factors

   1.      Extent of Overlap

The overlap of issues in parallel criminal and civil proceedings supports a stay. *See Gonzalez*, 571 F. Supp. 2d at 762. However, the parties here agree that neither Movant has been indicted on charges related to the claims at issue. While the Attanasio Affidavit states that the subject of Paragraphs 64 and 66 through 68 of the First Amended Complaint are being investigated, in the absence of any indictment, the Court cannot determine with certainty the extent of overlap. *See id.* (*quoting SEC v. Amerifirst Funding, Inc.*, No. 04-CV-4105-JPG, 2008 U.S. Dist. LEXIS 21229, at *8 (N.D. Tex. March 17, 2008)). Movants attach to their Rebuttal copies of subpoenas issued to four SAIC employees in February 2010, including one for persons and documents or object(s) issued to Robert Paul Gahrmann ["Gahrmann"]. This subpoena commanded Gahrmann to bring to his testimony before the Grand Jury the following:

> Any and all documents (including electronic versions) setting forth, describing, or relating to the policies or procedures relating to the destruction of government property, incl8uding [sic] specifically hard drives, disks, and data. This request is limited to policies or procedures that were in effect January 1, 2006 through Dec. 31, 2006.
>
> Any and all communications (including electronic versions) relating to the destruction of the hard drive or backup data from the laptop of Stephen A. Adamec.

Subpoena Issued to Robert Paul Gahrmann, attached as Ex. "C" to Rebuttal.

Though there has been no indictment, the Government and the Relator do not appear to dispute that the issues presented in the criminal investigation and in paragraphs 6 and 64-68 of the First Amended Complaint are substantially similar, if not identical. This extent of overlap of the issues appears to weigh in favor of a stay.

2. Status of Criminal Case

> "A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc. et al.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). "[A] defendant's privilege against self-incrimination is a factor favoring a stay only after that defendant has been indicted.'" [*United States ex rel. Shank v. Lewis Enters.*, No. 04-CV-4105-JPG, 2006 U.S. Dist. LEXIS 22065, *9 (S.D. Ill. April 21, 2006)] (citation omitted). "[T]he weight of authority suggests that a stay is generally not appropriate before indictment." *Id.*

*Gonzalez*, 571 F. Supp. 2d at 762-63.

Though pre-indictment requests for a stay are generally denied, a motion for a stay of a civil proceeding should not be categorically denied solely because the defendant has yet to be indicted in a criminal case. *See, e.g., Chao v. Fleming,* 498 F. Supp. 2d 1034, 1038 (W.D. Mich. 2007) (*citing Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998)). However, the case for staying a civil proceeding is strongest when the defendant has already been indicted. *See, e.g., Chao,* 498 F. Supp. 2d at 1037; *Maloney*, 328 F. Supp. 2d at 512; *Hicks v. City of New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003). Neither Movant has been indicted. This factor weighs against a stay.

3. <u>Private Interests of Plaintiffs in Proceeding Expeditiously, Weighed Against Prejudice to Plaintiffs Caused by the Delay</u>

The events underlying this litigation took place between 2002 and 2006. *See* First Am. Compl. [35], at p. 4-15. The instant case was initially filed in June 2006. It was transferred to this Court in May 2009. The Government filed both its Notice of Election to Intervene in Part and to Decline to Intervene in Part [27], and its initial Intervenor Complaint [28], on June 30, 2009. In short, this matter has already been pending for a considerable length of time, and discovery has reached an advanced stage.

Any stay of this case pending the resolution of an investigation into a narrow range of the allegations contained in the First Amended Complaint would heighten the risk of faded memories and unavailable witnesses. Insofar as staying the instant action could significantly delay these proceedings and prejudice both the Government's and the Relator's ability to obtain relief, the Court concludes that this factor weighs against granting the Motion.

4. <u>Private Interests of, and Burden on, Defendants</u>

Movants have not made any specific showing of harm they will suffer without a stay, or why other methods of protecting their interests are insufficient. *See Gonzalez*, 571 F. Supp. 2d at 764 (*citing In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990)). Also, "the pre-indictment nature of the pending criminal investigation weakens [Movants'] Fifth Amendment interest." *Id.* Given that neither Movant has been indicted, and that alternative means to protect each Movant's Fifth

Amendment rights may be available in response to particular deposition questions, the Court finds that, based on the whole record, this factor is neutral. *See id.* at 765.

Moreover, Movants have already testified about the subjects referenced in Paragraphs 6 and 64 through 68 of the First Amended Complaint. *See, e.g.,* Dep. of Stephen Adamec, at pp. 54-64, 79-82, attached as Ex. "A," to Govt.'s Resp.; Dep. of Robert Knesel, at p. 16-19, 29, 38-39, 42-45,[1] attached as Ex. "A," to Govt.'s Resp. The Court notes that Government investigators or inspectors were present at both depositions. *See* Dep. of Stephen Adamec, at pp. 1-2, attached as Ex. "A," to Govt.'s Resp.; Dep. of Robert Knesel, at p. 15, attached as Ex. "A," to Govt.'s Resp.

In Adamec's deposition, taken on December 17 and 18, 2007, during the course of the Government's civil investigation, he was questioned extensively regarding whether he asked Knesel to destroy his hard drive and all backup tapes upon Adamec's retirement in late October 2006. *See* Dep. of Stephen Adamec, at pp. 54-64, 79-82, attached as Ex. "A," to Govt.'s Resp. Adamec answered the Government's questions without invoking the Fifth Amendment. *See id.* This testimony related to paragraphs 64 and 66 of the First Amended Complaint.

Knesel testified in his deposition, taken on December 14, 2007, during the Government's civil investigation, about what he characterized as the "recycling" of Adamec's system. *See* Dep. of Robert Knesel , at pp. 16-18, attached as Ex. "A," to Govt.'s Resp. While represented by counsel, Knesel stated that Adamec called him

---

[1] The Court's own page numbers for this document are used when referring to Knesel's deposition, as the deposition transcript provided contains only excerpts and some pages lack numbering.

into his office, and gave him Adamec's laptop. *See id.* at pp. 38-39. According to Knesel, Adamec "instructed [him] to make sure that, basically, the data that he has on his system could not be brought up by any agency, referring to Lockheed Martin or AES, as these things get recycled." *Id.* at p. 42; *see id.* at p. 43. Knesel testified that because he was not certain that the disk would be unaccessible to anyone even if it was written over, he told IT specialist Bob Gahrmann, "we need to destroy the disk then." *Id.* at p. 43. Knesel testified that he instructed Gahrmann to destroy the hard drive in Adamec's laptop, and to shred all backup disks for Adamec's computer. *See id.*, at pp. 17, 19, 29, 34. Knesel further testified about his knowledge, or lack thereof, of other methods for wiping backups and hard drives clean. *See id.* at pp. 43-45. All of the foregoing testimony relates to the allegations contained in Paragraphs 64 and 66 through 68 of the First Amended Complaint.

Knesel was further questioned about whether he was placing papers in Adamec's office in burn bags at the time he ordered destruction of the disks. Knesel replied, "No, ma'am. No, ma'am. I did not go into Steve's office to touch anything." *Id.* at p. 38. This testimony relates to Paragraph 65 of the First Amended Complaint. Knesel testified as follows:

> Q. Were you aware that Mr. Adamec put the documents in his office in burn bags and sent them off for destruction?
> A. I know he was cleaning his office out, but I don't know if he put anything in burn bags, anything like that. I mean, we have shredder bags, I don't know about burn bags.
> Q. Were you aware that he was putting documents in shredder bags?
> A. Ma'am, I know he was cleaning out his office, yes, ma'am, that's all I know. I'm more than sure when you go through your office and

> you are leaving, I guess people throw things away, put them in the trash can. In some cases they shred them.
>
> Q. But you did not assist Mr. Adamec in that effort?
> A. No, ma'am, I did not.
>
> * * *
>
> Q. You were aware that Mr. Adamec was cleaning out his office, correct?
> A. Yes, ma'am, that's correct.
> Q. Can you tell me how you were aware of that?
> A. Basically, again, when I -- Steve is right by my office. I went up in there to talk to him about something. He was, you know, going through paperwork and that. I mean, that's how I'm saying that.
> Q. Did you see any of the documents that he was throwing out?
> A. No, ma'am, I did not. Steve used to keep his desk pretty high. And what I'm saying, he was cleaning up because basically it was all nice and clean.
> Q. And did you see documents leaving that office for shredding or in burn bags?
> A. No, ma'am, I did not. What we do, we have a -- once a week on, I think our turn is on a Tuesday, I don't know if it's 9:00 in the morning or whatever, to basically go over to the large shredder to shred any documents that need to be shredded. It's a standard thing. Every code has their time to do that.

*Id.* at pp. 39-41.

Based on all of the foregoing, and given that the subject matter of the six (6) paragraphs at issue represent but a small portion of the conduct alleged in a First Amended Complaint consisting of over one hundred ten (110) paragraphs, the Court concludes that any slight burden on Movants in this case is neutralized by the totality of the circumstances. On the whole, this factor is neutral, weighing neither for nor against a stay.

5.  <u>Interests of the Court</u>

This case was initially filed in June 2006. It was transferred to this Court in May 2009. Given the length of time these proceedings have already

been pending, the advanced stage of discovery in this case, and the uncertainty as to whether either Movant will even be indicted, granting the Motion could result in the imposition of a lengthy and indeterminable stay for no reason. The Court finds that, under the facts presented, its interests are best served by proceeding with the case. This factor weighs against a stay.

6. Public Interest

"'The public has an interest in both the prompt resolution of civil cases as well as the prosecution of criminal cases.'" [*In re CFS-Related Secs. Fraud Litig.*, 256 F.Supp.2d 1227, 1242 (N.D. Okla. 2003))] (*quoting Digital Equip., Corp. v. Currie Enter.*, 142 F.R.D. 8, 14 (D. Mass. 1991)). "The public interest in proceeding in an important civil enforcement matter that has already been filed seems to outweigh speculation about if and when an indictment will be returned." [*United States ex rel. Westrick v. Second Chance, et al.,* No. 04-280(RWR), 2007 U.S. Dist. LEXIS 23917, at *10-11 (D.D.C. March 31, 2007)] (declining to stay a FCA civil action).

*See Gonzalez*, 571 F. Supp. 2d at 765.

Under the facts presented, the Court finds that the public's interest in a prompt resolution of this matter likewise weighs against imposing a stay at this time. There is no evidence that an indictment of either Movant is imminent. Moreover, this is not a case in which the Government has brought a civil action solely to obtain evidence for its criminal prosecution. *See United States v. Kordel*, 397 U.S. 1, 11-12 (1970). Nor is this a case where Movants are without counsel or reasonably fear prejudice from adverse pretrial publicity or other unfair injury. *See id.* at 12. Finally, Movants have not presented evidence of any other special circumstances that might suggest the

unconstitutionality or even the impropriety of the criminal prosecution. *See id*.

### III. CONCLUSION

Considering the facts and the record in this case and the relevant law, and after weighing the relevant interests of all parties and the public, the Court concludes that a stay of these proceedings, or of Knesel and Adamec's depositions and other discovery, is not appropriate. Nor are there any "special circumstances" which would warrant such a stay. *See Sec. and Exch. Comm'n v. First Fin. Grp. of Tex., Inc.,* 659 F.2d 660, 666-67 (5th Cir. 1981). The Motion [221] to Stay should therefore be denied, without prejudice. Movants may reassert their Motion should there be a material change in circumstances, such as the return of an indictment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [221] to Stay Civil Proceedings, or Alternatively their Depositions and Other Discovery Pending Resolution of Criminal Investigation, filed by Defendants Robert Knesel and Stephen Adamec on June 4, 2010, should be and hereby is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 16th day of July, 2010.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE